## NICHOLS v. STEVENS, *Appellant.*

### In Banc, June 18, 1894.

1. **Corporation:** STOCKHOLDER: UNPAID STOCK SUBSCRIPTION: EXECUTION: FRAUD. In the absence of fraud or collusion, a judgment against a corporation is conclusive evidence of the liability of a stockholder in a proceeding against the latter under the statute to enforce by execution payment of the remainder due and unpaid on his stock subscription. (R. S. 1889, secs. 2517 and 2782.)

2. ———: ———: ———: ———. A judgment by default against a corporation is as conclusive against the stockholder as one entered after contest and trial.

3. ———: ———: ———: ———: FRAUD. The fraud to subject the judgment, in such case, to attack must be actual fraud as distinguished from a judgment obtained on false evidence or a forged instrument.

4. ———: ———: PLEADING: FRAUD. Where the defense of fraud is interposed, the answer must state the facts constituting the fraud.

Nichols v. Stevens.

5. **Corporation:** STOCKHOLDER: RELEASE OF LIABILITY. Where one incurs liability as a stockholder, neither the president nor board of directors of the corporation can release the liability to the prejudice of creditors.

6. **Practice:** AMENDMENTS: MOTION: PRESUMPTION. Amendments to a motion will be presumed to have been properly made, in the absence of a showing to the contrary.

7. ———: RECORD: CLERICAL RECITAL. Matters which are not in fact a part of the record can not be made so by the mere recital of the clerk.

8. ———: UNPAID STOCK SUBSCRIPTION: MOTION AGAINST STOCKHOLDER: AMENDMENT: EXCEPTIONS. A motion under Revised Statutes, 1889, section 2517, for execution against a stockholder for unpaid stock subscription, when sufficiently comprehensive, will be treated as a petition, and where no exceptions are saved to its amendment, and defendant pleads to it and goes to trial thereon, such amendment can not be objected to in the supreme court on the ground of a change of cause of action.

9. ———: REMOVAL OF CAUSE TO FEDERAL COURT: SECOND REMOVAL. Where a cause removed to the federal court is remanded because the petition for removal does not state the diverse citizenship of the parties, a second removal on the same ground is not allowable.

10. ———: ———. A petition for the removal of a cause to a federal court must be seasonably made or it will be refused.

*Appeal from Pettis Circuit Court.*—HON. RICHARD FIELD, Judge.

AFFIRMED.

This proceeding had its origin in a judgment rendered January 26, 1876, in the Pettis circuit court, in favor of plaintiff and against the Texas & Atlantic Refrigerator Car Company. The record in such original suit introduced in evidence shows a petition filed December 11, 1875, in ordinary form, containing the usual allegations, and is based on two promissory notes for $5,800 and $4,200 respectively, the former dated May 6, 1875, and the latter dated May 14 of that year; which notes were executed by said company through

its president, J. R. Barrett, made payable to said Barrett, and by him indorsed to plaintiff. Joel Ellis was also one of the indorsers on said notes. Service was had, in Sedalia, Pettis county, Missouri, at which place the headquarters and general business office of the company was located, on Barrett, the president of the company, the day the petition was filed, and judgment went by default.

On January 31, 1876, execution was issued on the judgment thus recovered, and a sale thereunder of a one-half interest in an icehouse occurred, realizing the sum of $25, said Barrett being the purchaser, and the judgment being credited with the sum of $12. The execution was then returned *nulla bona*.

In January, 1881, plaintiff commenced a proceeding in the Pettis circuit court to procure the issuing of executions against the defendant and one H. D. Mirrick, as stockholders in the Texas and Atlantic Refrigerator Car Company, against which plaintiff had previously recovered judgment on which execution was issued and returned *nulla bona*, except as to the costs and twelve dollars on the judgment. The original pleading, filed in January, 1881, averred the necessary facts under section 736 of Revised Statutes, 1879 (now section 2517 of R. S. 1889), and was the same in substance and effect as the amended motion on which the trial was had, and the judgment now appealed from, was rendered, except that the name of the corporation was inserted in the title of the cause and but one pleading was filed in which the relief sought was the issuing of the two executions against Stevens and Mirrick respectively the allegations and prayers as to each being separately stated. Summons was issued to the sheriff of Pettis county, on February 2, 1881, and returned April 16, 1881, *non est* as to defendant Stevens. An *alias* sum-

mons issued May 14, 1881, and was served on Stevens August 20, 1881.

On September 13, 1881, it being the third day of the September term, Stevens appeared and obtained leave to file his answer in sixty days after that term of court.   On January 3, 1882, being the first day of the January term, Stevens filed a demurrer, and on February 1, 1882, being the twenty-sixth day of the January term, he withdrew his demurrer, and again obtained leave to file an answer, in sixty days after that term, and on April 21, 1882, in vacation he filed an answer.

Afterwards on May 4, 1882, it·being the fourth day of the May term, defendant Stevens filed a petition to remove the case to the United States court, and on May 8, being the seventh day of the May term, he filed bond for such removal.   On such petition of Stevens and Mirrick the cases were together sent to the United States circuit court for the proper district.   In that court the defendants filed an answer identical with the last one filed, and a trial was had before a jury, on the demand of the defendants, which resulted in separate verdicts and judgments against the respective defendants.   Stevens took his branch of the case to the United States supreme court by writ of error, and while the same was pending Mirrick filed a petition for injunction to restrain the issuing of an execution against him.

Before the same was acted on, the supreme court of the United States reversed the judgment in the Stevens case, and remanded the case to the United States circuit court with directions to remand the case to the Pettis circuit court, for the reason that the case had not been properly removed from the state court, and the federal courts had never acquired jurisdiction, by reason of the fact that the affidavit for removal did not set forth the diverse citizenship of the parties at the

institution of the suit.    See *Stevens v. Nichols*, 130 U. S. 230.

Thereupon a stipulation was filed, and orders were made in the United States circuit court for the return of the cases to the Pettis circuit court.    Thereafter, on May 23, 1890, the said stipulation and orders and the original papers, etc., therein referred to were filed in the Pettis circuit court.

On the day of the return of the cause to the Pettis circuit court, the defendant filed a motion, verified by affidavit, to amend by interlineation this petition for removal showing the facts heretofore mentioned as omitted.    This motion being denied, they excepted, as shown by the bill of exceptions.    Then on the same day, plaintiff filed separate amended motions against the defendant, Stevens and Mirrick respectively.    The bill of exceptions contains no mention of any exceptions being saved to the action of the court in permitting these amended motions to be filed; but the *record* recites that the defendant excepted to the filing of such amended motions.

The amended motion against the defendant was the following:

"William Nichols,
Plaintiff,    In the Circuit Court of
*v.*    Pettis county, Missouri,
"Robt. S. Stevens,    May Term, 1890.
Defendant.

"Now again comes the plaintiff and, leave of court therefor first being had and obtained, for his amended motion or petition, states: That the Texas & Atlantic Refrigerator Car Company was, on May 1, 1875, and ever since has been, and now is, a corporation duly created and organized under the laws of the state of Missouri, and having its chief office in Pettis county, Missouri.

"That on the sixth day of May, 1875, said corporation by its president and duly authorized agents executed and delivered its certain promissory note, dated on that day, to one J. R. Barrett, whereby it promised, for value received, to pay, three months after the date thereof, to the order of J. R. Barrett, at the Commercial Bank of St. Louis, the sum of fifty-eight hundred dollars, which said note was afterwards by J. R. Barrett indorsed and delivered to this plaintiff for a valuable consideration.

"That on the fourteenth day of May, 1875, the said corporation, by its president and duly authorized agent, executed and delivered to said J. R. Barrett, its other promissory note, dated on that day, whereby it promised for value received to pay, three months after date thereof, to the order of J. R. Barrett at the Commercial Bank of St. Louis, the sum of forty-two hundred dollars, which said note was afterwards by J. R. Barrett indorsed and delivered to this plaintiff for a valuable consideration.

"That, default having been made in the payment of both of said notes, this plaintiff brought suit upon both of said notes in the circuit court of Pettis county, Missouri, on December 11, 1875, against said corporation, and on the twenty-sixth day of January, 1876, at the January term, 1876, of said court obtained judgment on said notes against said corporation for the sum of ten thousand, three hundred and seventy-seven and twenty-one one-hundreths dollars ($10,377.21), with ten per cent. per annum interest thereon, and for his costs in said suit taxed at the sum of six and seventy-five one hundredths dollars; that afterwards on the thirty-first day of January 1876, this plaintiff caused an execution to be issued on said judgment from the office of the clerk of said court which said execution was, on the first day of February, 1876, placed in the

hands of the sheriff of Pettis county, Missouri, and was by said sheriff on the twenty-fourth day of February, 1876, levied upon all the property of said corporation which could be found in said county; that said sheriff on the seventh day of March, 1876, sold said property for the sum of twenty-five dollars, of which he applied on the costs the sum of thirteen dollars and credited upon said judgment the sum of twelve dollars and returned said execution not satisfied as to the balance of said judgment, 'there being no other goods, chattels or property found belonging to the defendant, upon which to levy this execution.'

"Plaintiff states that except said sum of twelve dollars no part of said judgment has ever been paid, and that the balance thereof with interest thereon remains unpaid and is still due to plaintiff.

"Plaintiff further states that the defendant, Robert S. Stevens, is a stockholder in said corporation and has been ever since said May 1, 1875, holding and owning certificates of stock therein to the amount of five thousand dollars; that upon said stock said defendant has paid to said corporation the sum of one thousand dollars, and that the balance of said amount of stock subscribed and held by him is still due and unpaid and which plaintiff demanded of said defendant on March 7, 1876.

"Wherefore plaintiff prays the court that it enter its order and judgment, that plaintiff recover of defendant said sum of four thousand dollars with interest thereon from March 7, 1876, and for the costs of this proceeding and that execution issue therefor in favor of plaintiff against said defendant, Robert S. Stevens."

A similar motion was filed as to Mirrick.

There is a controversy between the litigants in this cause touching the character of the original motion or petition filed in this cause. A description of it as given

by plaintiff has already been inserted; defendant, how-
ever, says, concerning such motion or petition: "The
exact nature of this proceeding can not be determined,
because the original petition or motion, whichever it
was, is not preserved in the record. * * * The
paper itself describes itself to be an 'amended motion
or petition.' By it both the company and Mirrick are
dropped as defendants; they were included as code-
fendants up to that time. Originally the case seems to
have proceeded on the theory of a bill in equity and
maintained this character until this amendment selected
Stevens as the sole defendant in one proceeding and
Mirrick in the other and leaving the company out
altogether."

Afterwards the said defendants filed separate answers
to the separate amended motions or petitions. The answer
of defendant Stevens sets up three defenses, to wit:
The first is a traverse of all the allegations of the
amended motion or petition, except that it admits the
incorporation of the company and that Stevens took
twenty shares of the stock of the company on which he
paid fifty per cent. The second and third defenses are
the following:

"Defendant, for a second defense to the cause of
action alleged in said petition, states that the pretended
judgment described in said petition was recovered on
the two promissory notes described in said petition.
That at the time of the signing of the name of the
Texas & Atlantic Refrigerator Car Company to said
notes and each of them by J. R. Barrett, said Barrett
was the president of said company and he made said
notes and each of them payable to himself as the payee
thereof, and he, as the payee thereof, indorsed them
and each of them in blank and he got them and each
of them discounted at the Commercial Bank of St.
Louis, and he received and retained the proceeds of

said notes and has never accounted to said Texas & Atlantic Refrigerator Car Company therefor, as it was and is his duty to do. That said Texas & Atlantic Refrigerator Car Company did not pay said notes or either of them at their maturity. That prior to the institution of the suit by plaintiff against the Texas & Atlantic Refrigerator Car Company in this court on said notes, as alleged in plaintiff's petition, said J. R. Barrett had fully paid off and satisfied said notes and each of them to said bank and thereby became the legal owner thereof. That, at the time of said Barrett's paying off and satisfying said notes as aforesaid, he made and entered into the following collusive and corrupt agreement and scheme with the plaintiff who was at said time and at the time that said notes had been discounted at said Commercial Bank of St. Louis, the cashier thereof, to wit:

"Said J. R. Barrett was to fully pay off to said bank and take up said notes and deliver them, or cause to be delivered, to the plaintiff for the purpose of having suit brought on them for the use and benefit of said Barrett in the plaintiff's name as the ostensible owner and holder thereof, and the plaintiff was to execute his due bill to said Barrett for the amount of said notes, to wit, for the sum of $10,000, with the distinct understanding between plaintiff and said Barrett that said Barrett would never enforce the collection of said due bill against the plaintiff. That the plaintiff was to institute and prosecute suit on said notes in his own name for the use and benefit of said Barrett against the Texas & Atlantic Refrigerator Car Company, and said company was not to make any defense, although it had, a good, legal and meritorious defense to said notes. That said Texas & Atlantic Refrigerator Car Company had at said time no assets of any kind out of which said judgment could, be satisfied, only some

unpaid stock held by this defendant and other stockholders therein. That in pursuance of said agreement and scheme, said J. R. Barrett did, on or about the ninth day of December, 1875, pay off said notes and fully discharge the same to the said Commercial Bank of St. Louis, and the plaintiff took them up and on the eleventh day of December, 1875, had suit instituted on them in his own name for the use and benefit of said Barrett against said Texas & Atlantic Refrigerator Car Company in this court, and a summons for said Texas & Atlantic Refrigerator Car Company was issued in said suit to the sheriff of Pettis county, Missouri, returnable to the next term of this court, on the first Monday in January, 1876, and said summons was by said sheriff personally served on said J. R. Barrett, as the president of said Texas & Atlantic Refrigerator Car Company, on the eleventh day of December, 1875. That on the twenty-sixth day of January, 1876, a judgment by default was taken on said notes in the name of the plaintiff for the sum of $10,377.21, and on the thirty-first day of January, 1876, an execution was issued thereon and the sum of $12 realized on said execution in the manner alleged in plaintiff's petition and the execution returned not satisfied as to the balance of said judgment, 'there being no other goods or chattels or property found belonging to the defendant upon which to levy the same.'

"That on the fifteenth day of December, 1875, the plaintiff, in pursuance of said agreement and scheme, executed his due bill to said Barrett for the sum of $10,000 which said Barrett still holds, but which is to be delivered up to the plaintiff if he shall succeed in collecting said judgment, or if he does not, it is in no event to be collected off the plaintiff. That in pursuance of said agreement and scheme and as a part thereof, plaintiff has commenced this suit on said judg-

ment against this defendant as a stockholder in said Texas & Atlantic Refrigerator Car Company for the unpaid balance on his stock.

"Defendant avers that said J. R. Barrett was the president of said Texas & Atlantic Refrigerator Car Company at the time of his getting said notes and each of them discounted as aforesaid. That he has never accounted to said company for the proceeds of said notes or either of them. That, besides said notes, he collected and received large sums of money belonging to said Texas & Atlantic Refrigerator Car Company for which he has never, accounted to said company. That at the time said Barrett paid off and satisfied said notes as aforesaid, said Texas & Atlantic Refrigerator Car Company did not owe, nor was it indebted to, said Barrett. On the contrary said Barrett had subscribed for two hundred and fifty shares of capital stock of the Texas & Atlantic Refrigerator Car Company on which he has only paid fifty per cent. That he still owes and is indebted to said company for the balance of said stock. That the plaintiff never paid anything for said notes or either of them, and was not and is not a *bona fide* holder thereof for value, and he took them in pursuance of the agreement and scheme hereinbefore stated. That he had no right, title, interest or claim in or to said notes or either of them, at the time when he commenced suit thereon as aforesaid, and he has no title, right, interest or claim in or to said judgment now. That he instituted and prosecuted said suit in his own name for the exclusive use and benefit of said J. R. Barrett to final judgment in this court in pursuance of said agreement and scheme between him and said Barrett with the intent and for the purpose of fraudulently, improperly and unjustly preventing this defendant as a stockholder in said Texas & Atlantic Refrigerator Car Company from setting up the defenses

which the said Texas & Atlantic Refrigerator Car Company had and has to a suit by said Barrett in his own name, either on said notes or on said pretended judgment thereon; and for the purpose of fraudulently, illegally and unjustly coercing money out of this defendant as a stockholder in said Texas & Atlantic Refrigerator Car Company to pay said pretended judgment to plaintiff when said company did not and does not owe, nor is it indebted to, said Barrett for whose use and benefit the plaintiff is prosecuting this suit.

"That said J. R Barrett has been all the time and he still is the real party in interest and he has been ever since the commencement of this suit and still is prosecuting it in the name of the plaintiff, to prevent this defendant, as a stockholder in said Texas & Atlantic Refrigerator Car Company from setting up the equities existing between said company and said J. R. Barrett as the president thereof and a stockholder therein, and to prevent said Texas & Atlantic Refrigerator Car Company from calling on said Barrett to account to it for the proceeds of said notes and other money belonging to said company, collected by said Barrett as president thereof, and also to prevent said Barrett from being required to pay the unpaid balance on his stock in said company; and the claims and equities which said company had and has against said Barrett would more than offset any claim which said Barrett has against it, either on account of said notes or any other claim; and this defendant avers that if said Barrett were to settle fairly and account to said Texas & Atlantic Refrigerator Car Company for the money belonging to said company in his hands, that after allowing all just credits and offsets, he would be found indebted to said company, instead of said company being indebted to him; and that there would be no just claim against

said defendant for any unpaid balance, on his stock in said Texas & Atlantic Refrigerator Car Company.

"Defendant for a third defense to plaintiff's right to recover against this defendant on the judgment, described in plaintiff's amended petition, says it was recovered by fraud and is null and void as to this defendant. Defendant sets up and pleads the foregoing facts as a full and complete bar to the cause of action alleged in plaintiff's petition."

Thereupon plaintiff filed a reply admitting that the judgment had been recovered on the notes mentioned in the answer, that J. R. Barrett was the president of the Texas & Atlantic Refrigerator Car Company and signed said notes as such, to his own order and indorsed them in blank, but denying that Barrett received and retained any of the proceeds of said notes, or that he never accounted for the same, and alleged that the whole of the proceeds of both of said notes were received by said company and used by it in its business. The plaintiff further admitted that said company did not pay either of said notes at maturity, and denied all other allegations of the answer.

To maintain the issues on his part, plaintiff offered in evidence a copy of the record aforesaid of the proceedings, judgment, etc., in the Pettis circuit court in favor of the plaintiff and against the Refrigerator Car Company, to the introduction of which the defendant Stevens objected for the reason that the Pettis circuit court had no jurisdiction over the subject-matter of this suit; because the defendant Stevens was not a party to the judgment in said Pettis circuit court; because J. R. Barrett was the owner of the notes upon which the said judgment was recovered, and was president of the said Texas & Atlantic Refrigerator Car Company, the maker of said notes at the time suit was brought thereon; and said suit was brought for the benefit, and

was served on him as president, of said company, and that judgment was rendered by default and is null and void; and because said record was incompetent evidence against the defendant Stevens for any purpose, except to show that the plaintiff (Nichols) had recovered judgment against the Texas & Atlantic Refrigerator Car Company, and an execution had been issued thereon and returned *nulla bona.*

These objections were overruled by the court and the record was read in evidence. It was a full transcript of the pleadings, record entries and the execution and return thereon in the said case of Wm. Nichols *v.* the Texas & Atlantic Refrigerator Car Company in the circuit court of Pettis county, Missouri.

Plaintiff also read in evidence the subscription paper to the stock of the Texas & Atlantic Refrigerator Car Company, as follows:

"We, the undersigned, hereby subscribe the number of shares set opposite our names in the Texas & Atlantic Refrigerator Car Company, and obligate ourselves to pay therefor according to the by-laws or resolutions of the board of directors of said company:

"Witness our hand this — day of July, 1873.

| Name. | No. shares at $100 each. |
|---|---|
| R. S. Stevens | Fifty Shares. (50) |
| J. R. Barrett | 250 " |
| F. L. Rankin | 100 " |
| F. A. Hyatt | 100 " |
| W. P. Robinson | 100 " |

(Record, page 28.)

Also stock-stub as follows:

"Texas & Atlantic Refrigerator Car Company of Missouri.

"No. of certificate, 8.

"No. of shares, twenty.

"Amount paid, $1,000.00.

"To whom issued, R. S. Stevens.

"Residence, Sedalia, Mo.

"Date, Aug't 1, 1874.

"Received certificate referred to above, this — day of ——, 187—."

This was all the evidence offered by the plaintiff.

The defendant then offered a demurrer to the plaintiff's evidence, which was overruled by the court, and defendant excepted.

Other facts in evidence necessary to a proper understanding of the case will be adverted to hereafter.

*Geo. A. Madill* and *James A. Carr* for appellant.

(1) The correction of the petition for removal should have been permitted, and if allowed would have been related back to the time of the filing of the original petition for the removal. *Freeman v. Butler,* 39 Fed. Rep. 1; *Stephens v. Nichols,* 130 U. S. 230. (2) The motion could not be amended by substituting one cause of action for another, as was done in this case. Bliss on Code Pleading [2 Ed.], sec. 429, p. 665; *Lattman v. Barnett,* 62 Mo. 170; *Paxon v. Talmage,* 87 Mo. 13. (3) A party sustaining the fiduciary character of president of a corporation can not confer jurisdiction on a court by bringing suit in it against such corporation and causing the original process to be served on himself as its president. The policy of the law will not permit a man to assert a claim in his own favor as plaintiff against himself as defendant in his character as trustee. A judgment rendered in such a case is a nullity. *Coal & Mining Co. v. Edmunds,* 103 Ill. 472; *Co. v. Coal & Mining Co.,* 111 Ill. 32–38; *Harris v. Hardeman,* 14 Howard, 334; *Wilson v. Benedict,* 90 Mo. 208; *Faulkner v. Faulkner,* 73 Mo. 328; *Bank v. Knox,* 47 Mo. 334; *Graham v. Ringo,* 67 Mo. 324–326; *Byler v. Jones,*

79 Mo. 261.   (4) Stevens was not a party to the suit and is not concluded by it.   He is at liberty to attack the validity of the judgment.   *Wilson v. Railroad*, 18 S. W. Rep. 293; *Howell v. Monglesdorf*, 33 Kan. 194; *Whitmore v. Cox*, 26 Maine, 335; *Schrader v. Bank*, 133 U. S. 67; *Marx v. Fore*, 51 Mo. 69; *Barlow v. Steel*, 65 Mo. 611; *Latimer v. Railroad*, 43 Mo. 605; *Eager v. Stover*, 59 Mo. 87.   (5) The judgment by default against the corporation being a nullity, this proceeding which is based upon it can not be sustained.   The instructions asked by defendant, numbered 1, 2, 7 and 9, refused by the court, should have been given.   (6) The evidence shows that the two notes sued on by Nichols were never owned by him and that he had no interest in them which could authorize him to maintain a suit upon them against the corporation.   The instruction number 10 asked by the defendant should have been given.   (7) The evidence shows that Barrett in fact paid the two notes on which the judgment by default was obtained.   Hence Barrett could not, nor could Nichols for his, Barrett's, use and benefit, maintain a suit against the corporation on these notes.   The notes were extinguished.   *Patrick v. Gas Light Co.*, 17 Mo. App. 462.   Instruction number 1 asked by defendant should have been given.   (8) The evidence shows that Stevens refused, after the contemplated plan of conducting the business of the proposed company was changed and before the incorporation, to take more than twenty shares of stock; Barrett, as well as the company, acquiesced in, and acted upon, this.   He is, therefore, estopped to claim that Stevens held more than twenty shares of stock.   And, as the plaintiff, in view of the relations between him and Barrett, must be treated as if he were Barrett, he, also, is estopped from claiming against defendant upon more than twenty shares of stock.   *Walton v. Hake*, 9 Mo. App. 595; *Gelpcke v.*

*Blake*, 19 Iowa, 263–267; *Burke v. Smith*, 83 U. S. 390; *Bent v. Hart*, 73 Mo. 641; *Johnson v. Lullman*, 15 Mo. App. 55; *Erskine v. Peck*, 13 Mo. App. 280; s. c., 83 Mo. 465; *Brewing Co. v. Schneider*, 19 S. W. Rep. 67; *Whitehill v. Jacobs*, 44 N. W. Rep. 630. (9) The corporation, at the date of the institution of the suit by Nichols, in December, 1875, and at the date of the institution of this proceeding, was insolvent and had long since ceased to be a going concern. And the unpaid balances on stock subscriptions, as well as all other property of the corporation, was a trust fund which could not under such circumstances, be appropriated, by suit or otherwise, by one creditor to the exclusion of others. Much less, under such circumstances, can this be done by a plaintiff who is prosecuting such a suit for the use and benefit of the president of the insolvent corporation. *Shickle v. Watts*, 94 Mo. 418; *State ex rel. v. Moll*, 39 Mo. App. 131; *Mill Company v. Kampe*, 38 Mo. App. 229.

*G. P. B. Jackson* for respondent.

(1) The judgment on the notes in the circuit court of Pettis county, against the Texas & Atlantic Refrigerator Car Company, is conclusive against the plaintiff in error, as a stockholder in that company, notwithstanding that judgment was by default. Thompson's Liability of Stockholders, secs. 329 and 337; Freeman on Judgments, sec. 177; *Milleken v. Whitehouse*, 49 Me. 527; *Thayer v. Co.*, 108 Mass. 523–528; *State ex rel. v. Rainey*, 74 Mo. 229; *Ogilvie v. Ins. Co.*, 22 How. 380. The judgment concludes the parties and their privies as to all matters which might have been put in issue. *Stockton v. Ford*, 18 How. 418; *U. S. v. Throckmorton*, 98 U. S. 61; *Greene v. Greene*, 2 Gray, 361; *Christmas v. Russell*, 5 Wall. 290–307;

*Brooks v. O'Hara*, 8 Fed. Rep. 529. It can not be attacked collaterally for fraud by the parties or their privies, but remains conclusive against them until reversed on appeal, or set aside in a direct proceeding for that purpose. Cases above cited, and Freeman on Judgments, secs. 132, 334–336. Nor can the stockholder be permitted to show that the debt on which judgment was rendered against the corporation was the debt of its president and not of the corporation. *Donworth v. Coolbaugh*, 5 Iowa, 300. The above rule would exclude the defenses relied on by the plaintiff in error, that Nichols was not the owner of the notes on which he recovered judgment against the corporation; that those notes had been paid; or that the transactions out of which they rose were fraudulent. But, even if such were not the law, there is nothing in these pretended defenses, because the plaintiff in error did not properly plead any supposed fraud, and there was no evidence tending to show any fraud, nor any payment of the notes sued on in the suit by Nichols against the corporation, or that Nichols was not entitled to maintain that suit. (2) The suit on the notes against the corporation and the present proceeding was properly brought by Nichols under the circumstances detailed in evidence. The notes were not paid off, and the arrangement between Nichols and Barrett made the former a trustee of an express trust for the benefit of the latter. *Nicolay v. Fritschle*, 40 Mo. 67; *Snider v. Adams Express Co.*, 77 Mo. 523–527; *Webb v. Morgan*, 14 Mo. 429; *Beattie v. Lett*, 28 Mo. 596; *Simmons v. Belt*, 35 Mo. 461. The service of the summons on Barrett as president of the T. & A. R. Car Co., was valid. *Schaeffer v. Brewing Co.*, 4 Mo. App. 115. (3) The pretended release of Stevens from a part of his subscription could not avail him. The directors of a

corporation can not release a stockholder to the prejudice of others—much less can the president do so. *Road Co. v. Menefee*, 25 Mo. 547; *Upton v. Tribilcock*, 91 U. S. 45; Beach on Priv. Corp., sec. 110; *Pickering v. Templeton*, 2 Mo. App. 424; *Sawyer v. Hoag*, 17 Wall. 610; *Burke v. Smith*, 16 Wall. 394. Moreover, the plaintiff in error failed to prove any release. (4) It was not necessary that the proceeding against the stockholders should have been in equity. *Flash v. Conn.* 109 U. S. 371. Nor that all the stockholders should be joined. *Ogilvie v. Ins. Co.*, 22 How. 380; *Hatch v. Dana*, 101 U. S. 205. (5) No objection having been taken to joining two stockholders, the misjoinder, if such there was, was waived, if not made before trial. *Railroad v. Watson*, 61 Mo. 57–60; *Kellog v. Malin*, 62 Mo. 429–431; *Loeding v. Bartlett*, 35 Mo. 94; *Russell v. Defrance*, 39 Mo. 511. (6) The case could not be removed on a petition filed or amended after the case was remanded from the U. S. court. *Johnston v. Donvan*, 30 Fed. 395; *Worlf v. Chisholm*, 30 Fed. Rep. 881; *Austin v. Gaga*, 39 Fed. Rep. 626; *Webber v. Humphreys*, 5 Dill. 223.

DIVISION TWO.

SHERWOOD, J.—This proceeding is grounded upon section 736, Revised Statutes, 1879, now section 2517, Revised Statutes, 1889, and section 940, Revised Statutes, 1879, now section 2782, Revised Statutes, 1889, which sections are respectively as follows.

"Sec. 736. If any execution shall have been issued against any corporation, and there can not be found any property or effects whereon to levy the same, then such execution may be issued against any of the stockholders to the extent of the amount of the unpaid balance of such stock by him or her owned; *provided,*

*always*, that no execution shall issue against any stockholder, except upon an order of the court in which the action, suit or other proceedings shall have been brought or instituted, made upon motion in open court after sufficient notice, in writing, to the person sought to be charged; and, upon such motion, such court may order execution to issue accordingly, *and provided further*, that no stockholder shall be individually liable in any amount over and above the amount of stock owned."

"Sec. 940. No stockholder shall be personally liable for the payment of any debt contracted by any corporation created under this article, which is not to be paid within one year from the time the debt is contracted, nor unless a suit for the collection of such debt shall be brought against such corporation within one year after the debt shall become due; and no suit shall be brought against any stockholder who shall cease to be a stockholder in any such corporation for any debt so contracted, unless the same shall be commenced within two years from the time he shall cease to be a stockholder in such corporation, nor until an execution shall have been returned unsatisfied, in whole or in part."

1.    Whatever may have been thought at a former period, and in some jurisdictions, as to the effect upon a stockholder of a judgment rendered against his corporation, at the present time, the execution and organization of a corporation having been established, a judgment against such corporation, being proved, is conclusive evidence of debt against its stockholders, where the plaintiff in the original and the primary and auxiliary actions is the same, in the absence of collusion, fraud, etc., and not upon *original* grounds. 1 Freeman on Judgments [4 Ed.] sec. 177, and cases cited. And a judgment by default against a corporation equals, in

conclusiveness as to a stockholder, one obtained after contest. Authorities *supra.* Except on the grounds before mentioned, it is out of the power of a stockholder to go back into the original consideration of the judgment against the corporation, that the indebtedness for which the judgment was rendered, was the debt of the president and not of the corporation. Thompson's Liabilities of Stockholders, secs. 329, 337, and cases cited; *Donworth v. Coolbaugh,* 5 Iowa, 300.

Such judgment against the corporation is valid against a stockholder, until reversed by him in some direct proceeding for that purpose, and can not be attacked collaterally. See authorities *supra.*

The rule thus announced in the foregoing authorities eliminates the defenses relied on by defendant, that Nichols was not the owner of the notes that were merged in the judgment against the corporation; that such notes had been paid, or that the transactions which gave origin to the notes were fraudulent. At any rate, there was no fraud proved at the trial, nor does the second defense in the answer show that the judgment against the corporation was *concocted* in fraud; that fraud was practiced in the *very act* of obtaining the judgment. The fraud in such case must be *actual* fraud as contradistinguished from a judgment obtained on false evidence or a forged instrument on the trial. 1 Bigelow on Fraud, pp. 86, 87; *United States v. Throckmorton,* 98 U. S. 61; *Ward v. Southfield,* 102 N. Y. 287; 2 Story's Equity Jurisprudence, sec. 1579.

The principle, of course, would be the same were a party defendant to resort to a collateral attack on the judgment alleged to have been fraudulently obtained, instead of a direct attack. And there is abundant authority to sustain the view that in modern adjudication there is no longer any distinction made between the two methods of attack. 1 Bigelow on Fraud, p. 94.

and cases cited; *Mandeville v. Reynolds*, 68 N. Y. 528; *Rogers v. Gwinn*, 21 Iowa, 58; *Davis v. Headley*, 22 N. J. Eq. 115; *Dobson v. Pearce*, 12 N. Y. 165; *Ward v. Quinliven*, 57 Mo. *loc. cit.* 427; 2 Freeman on Judgments [4 Ed.], sec. 576, p. 996; 2 Black on Judgments, sec. 973; *Spencer v. Vigneaux*, 20 Cal. 442. So that, should we treat the answer as a collateral attack on the corporation judgment, the result would not be at all variant from a direct attack, since in the former, as well as in the latter, the substance of the pleading would have to be the same.

As to the third defense of defendant's answer, it is bad on grounds already stated, and also on the additional ground that a simple conclusion of law is pleaded. That it is necessary to set forth in a *petition* the facts constituting the fraud pleaded, no one has ever doubted or denied. Logical and legal consistency, therefore, require that an answer should as necessarily state the *constitutive* facts of the fraud relied on, as that a *petition* should do so. This is the view taken by Judge BLISS in his work on pleading, where he says: "In alleging fraud, it will not suffice to say that the party fraudulently procured, or fraudulently induced, or fraudulently did this or that, or that he committed or was guilty of fraud; the facts which constitute the fraud must be stated. Fraud is a conclusion of law. A statement that defendants, in concert, did by connivance, conspiracy and combination, beat and defraud the plaintiff out of, etc., does not state the facts that constituted the cause of action. It does not appear what they did; the legal conclusion—an epithet only—is applied to their acts without knowing what they were." Code Pleading [2 Ed.], sec. 211; see, also, *Ibid.* sec. 339, and note.

Several authorities in this state support a similar view as to a petition. *Smith v. Sims*, 77 Mo. 269; *Reed v. Bott*, 100 Mo. 62; *Hoester v. Sammelmann*, 101

Mo. 619; *Mateer v. Railroad,* 105 Mo. 320; *Williams v. Railroad,* 112 Mo. *loc. cit.* 496. No reason is perceived why the same rule should not as well apply to an *answer* as to a *petition.*

The case of *Montgomery v. Tipton,* 1 Mo. 446, holds a general averment of fraud good in an answer, and cites Chitty's Pleading as authority, and *Pemberton v. Staples,* 6 Mo. 59, follows in its wake; and the same may be said of *Edgell v. Sigerson,* 20 Mo. 494. The cases in 1 and 6 Mo. were correctly decided, because we were then practicing under the common law; not so, however, when *Edgell's case* was determined, because that was in 1855, and we had adopted in substance the New York Code in 1849, and with its adoption, we took with it the construction put upon it by the courts of that state, which construction is contrary to the views expressed in *Edgell's case. Pierson v. Cooley,* 1 Code Reporter, 91; *Beers v. Squire* (1848), *Ibid.* 84; *McMurray v. Gifford,* 5 How. Pr., 14, and cases cited. See, also, *Lefler v. Field,* 52 N. Y. 621. This view is also taken in other code states. See note to section 339, Bliss on Code Pleading.

And there is as little reason for making any distinction in this regard between *petitions* and *answers,* as there is for saying that a petition is not good in *equity* unsles it sets forth the facts constituting the fraud; but that it may be good at law, because we have in this state but one form of action. If fraud is necessary to be pleaded at all, it is just as necessary to plead the *constitutive* facts when asking for *legal* relief, as there is when asking for *equitable* relief. See *Clough v. Holden,* 115 Mo. *loc. cit.* 353, 354.

In *Little v. Harrington,* 71 Mo. 390, obeying the behests of the code, we disapproved *Fordyce v. Hathorn,* 57 Mo. 120 and earlier cases, which asserted that matters in abatement and in bar could not be united in the

same answer. *Little's case* has frequently been followed since. *Byler v. Jones*, 79 Mo. 261; *May v. Burk*, 80 Mo. 675; *Young Men's Christian Association v. Dubach*, 82 Mo. 475; *Cohn v. Lehman*, 93 Mo. 574.

For these reasons the answer should be held insufficient both in its second and third defenses, and if so, the evidence offered in support of those defenses, need not be set out at large.

2. The evidence shows that defendant Stevens subscribed for fifty shares of stock in the company. This being the case, his liability was commensurate with that number of shares, and that liability could not be diminished by a release from the president, of which there was no proof. Even the *directors* of the corporation could not release a stockholder to the prejudice of creditors. *Upton v. Tribilcock*, 91 Mo. U. S. 45; 1 Beach on Private Corporation, section 109; *Plank Road Co. v. Menefee*, 25 Mo. 547, and other cases.

3. The original motion to obtain execution against Stevens and Mirrick not having been preserved, we can only conjecture as to what it was, and, in the absence of the original, we shall presume that the trial court ruled correctly in permitting the amendment to be made which was made; because there was no exception saved as to the amendment being permitted, or if there were, it was abandoned by not being preserved in the bill of exceptions, *the only repository known to the law where matters of mere exception can be preserved.* A recitation in the record of matters not properly belonging thereto, of matters belonging solely to the bill of exceptions, can not be noticed in an appellate court. Matters which are not in fact a part of the record can not be made such by the mere recital of the clerk. *Parkinson v. People*, 24 N. E. Rep. 772 and cases cited. *Gould v. Howe*, 127 Ill. 251, and cases cited.

4. It will have been noticed that section 736 of the statute requires a *motion* to be made in order to have execution issued against a stockholder; that section is found under the title corporations, and under the special head of "General Powers, Duties and Liabilities," while section 940, *supra*, of the same chapter is found ranged under the head of "Manufacturing and Business Companies," and requires a *suit* to be brought, etc., etc.

The motion in this case is sufficiently comprehensive to constitute a *petition* and is a petition in all essential particulars, and is to be so treated. *Wilson v. Railroad*, 108 Mo. 588 and cases cited. So that no objection can be raised to the form of the pleading, and, no exceptions having been saved to the amendment of the motion in the trial court, and the defendant having pleaded to it and gone to trial, he can not raise the point of a change of cause of action, even if such amendment could be regarded as such change, which is not admitted.

V. It is urged, in regard to the removal of the cause to the federal court, that error occurred. Several authorities establish the proposition that when a cause has been removed to a federal court and has been remanded because the petition for removal does not set up the diverse citizenship of the parties at the commencement of the suit, etc., there a second removal on the same ground is not allowable. *Johnston v. Donvan*, 30 Fed. Rep. 395; *Railroad v. McLean*, 108 U. S. 212, and cases cited. And even if this obstacle had not arisen in this case, one equally fatal is apparent of record, and that is that Stevens did not file his petition for removal until several terms of the Pettis circuit court had lapsed. *Woolf v. Chisolm*, 30 Fed. Rep. 881; *Austin v. Gagan*, 39 Fed. Rep. 626; *Dixon v. Telegraph Co.*, 38 Fed. Rep. 377. And it has also been held by the

federal courts, that an extension of time to the next term could not be granted even by *stipulation of parties*. *Car Co. v. Speck*, 113 U. S. 84, *et seq*. This was the ruling under the removal act of 1875, and that of 1887 is much more strict. Refusal of the trial court to permit defendant Stevens to amend his petition for removal was, therefore, proper.

VI. The declarations of law asked by defendant need not be discussed in detail as the principles they involve have been sufficiently touched upon already; there was no error in refusing them.

Therefore judgment affirmed. BURGESS, J., concurs. GANTT, P. J., not sitting.

IN BANC.

PER CURIAM.—The foregoing opinion delivered in division number two is adopted and approved *in banc*. GANTT, J., not sitting. BARCLAY, J., concurs in the result.