Chance v. Jennings.

CHANCE v. JENNINGS et al., Appellants.

### Division One, February 12, 1901.

1. **Pleading:** AMENDMENT BEFORE DECREE. It is not error to permit plaintiff before the entry of the final decree, to amend his petition so as to conform it to the facts proven in reference to the transfer of land to defendant, if such amendment does not change the cause of action.

2. ———: ———: EXCEPTION AT THE TRIAL. An objection to the amendment of a pleading before the entry of a decree, must be made in the trial court, and can not be raised for the first time on appeal.

3. **Deed as Mortgage:** VERBAL DEFEASANCE. A conveyance absolute in form, if intended at the time of its execution as a security for a debt, may be treated by a court of equity as a mortgage, and the grantor permitted to redeem. Nor is it absolutely necessary in all cases, in order to satisfy the requirements of the statute of frauds, that a written defeasance should have been entered into between the parties, for if there is a denial of the trust character of the conveyance by the grantee, equity will treat his denial as a fraud, and hold him as firmly to the verbal defeasance as though it had been a formal written one.

4. ———: ———: CASE STATED. Plaintiff owed a number of debts, some of them secured by mortgages and one by a mechanic's lien on his homestead, and among others one to the defendant. Foreclosure proceedings had been begun under one of the mortgages, and thereupon he and defendant agreed that he would make a note, to mature in three years, for the entire amount of all his indebtedness and convey the homestead by warranty deed to defendant. This was done, the consideration expressed in the deed being the exact amount of the note. A quitclaim deed back to plaintiff was made, and a memorandum, signed by both parties, was written on the note that if the maker paid the note before its maturity, and kept the interest paid up, he should have the quitclaim. It was also agreed that the note and the quitclaim were to be placed with a bank, upon condition that they should remain there until plaintiff paid the note,

Chance v. Jennings.

or defaulted in principal or interest. The land was worth far more than the amount of the note. It was agreed that plaintiff should remain in possession of the land until default. He did not default, but defendant did not deposit the papers in the bank, and before maturity of the note defendant sold the land and note to his brother, and plaintiff, on learning of it, paid him interest, and then the brother sold the land to an innocent purchaser, who evicted plaintiff by ejectment before the maturity of the note or default in interest. *Held,* that the deed was intended to operate as a mortgage, and plaintiff was entitled to judgment for the difference between the amount of the note and the value of the land.

5. ———: ESTOPPEL. An estoppel to be available, must be affirmatively pleaded, and hence defendant can not be heard to contend that plaintiff is estopped because he paid interest to defendant's brother after the transfer to him.

6. ———: LACHES. As plaintiff brought this suit to have the deed declared a mortgage before the maturity of the note; as the holder of the note had received the interest from him as it fell due, and as he had remained in possession until evicted at the suit of the innocent purchaser, he can not be charged with laches.

7. ———: EFFORT TO DEFRAUD CREDITORS. If the property conveyed by a deed absolute on its face, was the grantor's homestead, it will not avail as a defense, in a suit by plaintiff to have the deed decreed a mortgage, to show that the conveyance was an effort to defraud grantor's creditors. There can be no fraudulent conveyance of a homestead.

Appeal from Boone Circuit Court.—*Hon. Jno. A. Hockaday,* Judge.

AFFIRMED.

*W. Gordon, Fry & Clay* and *H. S. Booth* for appellants.

(1)   It was error to allow the amended petition to be filed after the case was submitted.   The amendment was made to overcome the errors made in the trial of the case and defendant

Vol 159 mo—35

had no opportunity to file an amended answer. It raised a new issue involving defendant's liability for the twenty-acre tract against which defendant had no opportunity to defend. (2) There is no equity in the case. Plaintiff freely made his contract, and it provided that if he paid the note when due "he shall be entitled to a deed herewith." If entitled to recover, plaintiff's recovery was limited to what he contracted for, the deed. The decree of the trial court finds the value of the land and renders a money judgment. It is not the province of courts to make contracts for parties. If the parties be competent to contract, and neither takes undue advantage of the other, the contract will not be disturbed. Tison v. Labeaume, 14 Mo. 198; Harrison v. Town, 17 Mo. 237. In the absence of fraud, mistake or undue influence, equity will not interfere. It was not claimed that the warranty deed was intended as a security for a debt, and the court erred in adjudging it a mortgage. Book v. Beasly, 138 Mo. 460; Cobb v. Day, 106 Mo. 300. The effect of the decree in this case is an enforcement of a forfeiture for the non-performance of the contract. This a court of equity will not do. Sease v. Cleveland Co., 141 Mo. 488. At the most, under the evidence in this case, defendant has been guilty of a breach of contract, and plaintiff's remedy, if any, is an action for damages. Defendant is, and all the time has been, solvent, and plaintiff, if injured, has an adequate remedy at law, and is not entitled to equitable relief. Humphreys v. Atlantic M. Co., 98 Mo. 542; Bank v. Moran, 138 Mo. 59. (3) Plaintiff asks to recover on the written contract indorsed on the note. A recovery on this contract can not be maintained because it is not sufficient to satisfy the statute of frauds on account of want of description of the land. Fox v. Courtney, 111 Mo. 147; Weil v. Willard, 55 Mo. App. 376. It is true the forty-acre tract is described in the quitclaim deed, but the twenty-acre tract is in no way

connected with or referred to in the contract. Kelly v. Thuey, 143 Mo. 435. (4) Plaintiff is not entitled to relief because of his laches. Acquiescence for three years in a contract, with full knowledge of its nature, is evidence of a voluntary execution of it, which precludes equitable relief. Murdock v. Lewis, 21 Mo. App. 243; Landrum v. Bank, 63 Mo. 48; Schradski v. Albright, 93 Mo. 48; Bryant v. Hitchcock, 43 Mo. 527. (5) The quitclaim deed was not delivered in escrow. While there was some evidence that the said deed was to be placed in bank, as a matter of fact it was retained by defendant, and not delivered in escrow. 1 Devlin on Deeds (2 Ed.), secs. 312-315. (6) The entire transaction, conveyance of the land to defendant, note, contract and quitclaim deed originated in fraud on the part of the plaintiff to defeat his general creditors. A court of equity will not aid a fraudulent transaction. Southworth v. Hopkins, 11 Mo. 331; Rinehart v. Long, 95 Mo. 396.

*Joe H. Cupp* and *Turner & Hinton* for respondent.

(1) (a) No error was committed in permitting an amendment of the petition so as to conform to the proof as to the manner of the transfer of the twenty-acre tract to the defendant. This in nowise changed the cause of action or defense. Carr v. Moss, 87 Mo. 447; Welday v. Jones, 79 Mo. 170; Ins. Co. v. Smith, 117 Mo. 261. (b) The action of the trial court in allowing the amendment is not open to review, since the defendants neither excepted to the order permitting the amendment, nor assigned it as a ground for a new trial. Nichols v. Stephens, 123 Mo. 96; Childs v. Railroad, 117 Mo. 414; Holliday v. Mansker, 44 Mo. App. 465. (2) (a) This action is based solely on the idea that the conveyance to W. W. Jennings, though absolute in form, was intended simply as a

security for a debt; in other words, that it was in effect a mortgage. Hence, when the court found that fact to be true, the right to reclaim the mortgaged property upon payment of the debt inevitably followed. Wilson v. Drumrite, 21 Mo. 325. (b) The quitclaim deed, in connection with the note and memorandum thereon, amounted to a defeasance, and characterized the transaction in this case as a mortgage. Copeland v. Yoakum, 38 Mo. 349; Sharkey v. Sharkey, 47 Mo. 543; Bender v. Zimmerman, 122 Mo. 194. These evidences conclusively stamped the transaction as a mortgage. Bobb v. Wolf, 148 Mo. 344; Book v. Beasly, 138 Mo. 455; Cobb v. Day, 106 Mo. 278; Reyburn v. Mitchell, 106 Mo. 378. (3) (a) The objection that the memorandum on the back of the note was not sufficient under the statute of frauds, is based on a total misconception of the action, which is not based on the redemption contract at all, but solely on the breach of trust or duty imposed by law on the defendant as mortgagee under this character of mortgage. No memorandum in writing is required to show that a conveyance, no matter what form it may assume, is in effect a mortgage. The denial of the trust by the grantee takes the case out of the statute. O'Neill v. Capelle, 62 Mo. 202; Cobb v. Day, 106 Mo. 278. (b) Even if the case had been within the statute of frauds, parol evidence would have been competent to identify the deed called for by the memorandum as the "deed herewith." Calloway v. Henderson, 130 Mo. 77; Bray v. Adams, 114 Mo. 486; Skinker v. Haagsma, 99 Mo. 208. (4) (a) If an estoppel was relied on in this case it ought to have been pleaded. Bray v. Marshall, 75 Mo. 327; Noble v. Blount, 77 Mo. 235; Hammerslough v. Cheatham, 84 Mo. 13; Avery v. Railroad, 113 Mo. 561; Throckmorton v. Pence, 121 Mo. 50. (b) The proof fails to disclose a single element of an estoppel *in pais*. Newman v. Hook, 37 Mo. 208; Spurlock v. Sproule, 72 Mo. 503; Noble

v. Blount, 77 Mo. 235.   (5) The plaintiff was not guilty of laches in failing to bring suit to redeem before the maturity of his note and before his possession had been disturbed.   No change had taken place in the situation of the parties or the condition of the property.   Spurlock v. Sproule, 72 Mo. 503; Turner v. Johnson, 95 Mo. 431.   No question of laches can arise because the debtor was not in default at all.   His note had not matured, and his interest had been promptly paid. He was not disturbed in his possession of the property; and he was lulled into security by the repeated assurances of W. W. Jennings that Jack Jennings would carry out the agreement.

ROBINSON, J.—This is a proceeding in equity brought by the former owner of certain real estate in Boone county, against W. W. and S. J. Jennings, the general object and nature of which is to have a deed absolute on its face, declared a mortgage, and to obtain a reconveyance of a part of the property included therein, and to recover the excess in value above the debt, of a part of the property, which had been conveyed away by the grantee.   The statement made by the counsel for the plaintiff seems to be full, clear and impartial, and we therefore adopt the following portion thereof.

"The petition alleged in substance that on the sixteenth day of February, 1894, the plaintiff executed and delivered to the defendant W. W. Jennings, his certain promissory note of that date for the sum of $937, due in three years, with eight per cent interest from date; and that at the same time, for the purpose of securing said note, he conveyed a forty-acre tract of land to said defendant by deed of general warranty, and also transferred to him a title bond under which he held a twenty-acre tract; and that contemporaneously therewith a written memorandum was indorsed on the back of the note providing that the plaintiff should have a reconveyance of the

property upon payment of the debt and interest at or before maturity. That thereafter the defendant, W. W. Jennings, without plaintiff's knowledge or consent, conveyed the forty-acre tract, which was worth largely more than the debt, to the defendant, S. J. Jennings, and that thereafter in 1896, S. J. Jennings wrongfully conveyed said tract to an innocent purchaser. That plaintiff had paid the annual interest on said note as the same became due, and before the maturity thereof caused the full amount of the note and interest to maturity to be tendered to the defendant W. W. Jennings, who refused to accept the same. The plaintiff, by his bill, which was filed before maturity of this note, offered to pay whatever the court might find due thereon, and this offer was renewed in open court at the trial.

"The answer of the defendant W. W. Jennings, which is rather out of the ordinary, consisted: 1st, of a general denial; 2d, of an allegation to the effect that the plaintiff had conveyed the property in controversy to him 'for the purpose and with the view of paying to him a note due him of $937, due three years after date with all interest due thereon,' but that such conveyance was made on the plaintiff's part for the purpose of defrauding his other creditors; 3d, of an admission that defendant had signed the following memorandum on the back of the note: 'Should E. B. Chance pay this note on or before due, and keep the annual interest paid each year, he shall be entitled to deed herewith. But if he fails to pay the annual interest when due, or pay entire note, said Jennings or his legal representatives may cancel deed and this note and declare the conveyance void and of no force,' coupled with an averment that such memorandum was insufficient under the statute of frauds.

"The answer of the defendant S. J. Jennings was a general denial.

"The evidence showed that the plaintiff had owned the forty-acre tract for some ten or twelve years, during all of which time he had occupied it with his family as a homestead, and had planted on it quite a large orchard which gave it its chief value. He also held a title bond to a twenty-acre tract adjoining, which he had purchased, in 1891, from the Rollins executors, on which he had made one payment of $25. This twenty-acre tract was unimproved land and its value did not exceed the amount of the Rollins debt, but the forty-acre tract was well improved, and the court found its value to be $1,500. These two tracts constituted all of the real estate owned by the plaintiff, and in fact substantially all of his property of any description. The forty-acre tract was encumbered by a first deed of trust in favor of the Lombard Investment Company, for some $350, by a second deed of trust in favor of Dr. A. Wallace for some $200, and by a mechanic's lien for some $30 or $35. In addition to these, the plaintiff owed between $105 and $110 as the balance of the purchase price on the twenty-acre tract and an unsecured debt of about $200 to the defendant W. W. Jennings. The holders of the two deeds of trust were pressing the plaintiff for payment, and shortly before the conveyance in controversy was made, had caused the trustee to advertise the forty-acre tract for sale. After making several attempts to raise the money, the plaintiff applied to W. W. Jennings, who, in order to get his own debt secured, agreed to take up all the lien debts against the two tracts. These four debts and interest, together with the debt to Jennings amounted to $937. To carry out the arrangement, the plaintiff, on the sixteenth day of February, 1894, executed and delivered to the defendant his promissory note for that amount, due three years after date, and the latter paid off the two mortgages and mechanic's lien, and partially satisfied the vendor's lien on the twenty-acre tract. At the same time the note was given, the

plaintiff, for the purpose of securing it, conveyed to the defendant his forty-acre homestead tract by deed of general warranty, and also transferred to him the title bond to the twenty-acre tract. Jennings required the plaintiff to give an absolute deed instead of a deed of trust, so as to avoid the trouble and expense of a foreclosure sale in case of default, which he seems to have regarded as a practical certainty. As a part of the same transaction the defendant signed and acknowledged a quitclaim deed reconveying the property to the plaintiff, and this was placed in an envelope along with the note on which had been placed a memorandum signed by both parties, providing that upon payment of the note the plaintiff should receive the quitclaim deed, but if default was made in the payment of the debt or interest, the defendant W. W. Jennings should have the right to cancel the debt and treat the conveyance as absolute. It was agreed between the parties at the time, that the quitclaim deed should be placed in the bank until the plaintiff either redeemed or made default, and that until default was made he should retain possession of the premises.

"On the twenty-fourth of September, 1894, the defendant conveyed the forty-acre tract to his brother S. J. Jennings by deed of general warranty, and at the same time indorsed the note over to him. This conveyance was made without consulting the plaintiff, and it is not claimed that he had any knowledge of it until sometime afterwards. When the first year's interest was about to fall due the plaintiff went to W. W. Jennings to pay it, and was then informed that S. J. Jennings held the note and that the interest should be paid to him. S. J. Jennings made some objection about receiving the interest, but finally did so. There was also some hitch about the second year's interest which S. J. Jennings finally received a day or so after it was due.

"About a month after the receipt of the second year's inter-

est S. J. Jennings conveyed the land to Joseph Eckley, an innocent purchaser, and he evicted the plaintiff under a judgment in ejectment in October, 1896. About the first of January, 1897, the plaintiff tendered the full amount of the note and interest to maturity to W. W. Jennings who declined to receive it, and thereupon this action was begun."

The circuit court found all the issues for plaintiff, and gave judgment against W. W. Jennings for $556.20, being the difference between the amount of the debt and the value of the forty-acre tract, and decreed a reconveyance of the twenty-acre tract and a cancellation of the note for $937.31 given by plaintiff to W. W. Jennings on February 16, 1894. From that judgment defendants have appealed.

After the evidence was closed plaintiff was permitted by the court to amend the petition so as to conform to the facts proven touching the manner of the transfer to defendant W. W. Jennings of the twenty-acre tract. The propriety of allowing such amendment is challenged by counsel for appellant on the ground that the amended petition changes the cause of action, with respect to defendant's liabilities as to the twenty-acre tract against which the defendant had no opportunity to be heard.

There was no error in permitting plaintiff, before the entry of the final decree, to amend his petition so as to conform to the proof as to the transfer of the twenty-acre tract, especially when, as here, such amendment in nowise changes the cause of action. [Welday v. Jones, 79 Mo. 173; Insurance Co. v. Smith, 117 Mo. 261.]

Moreover, this objection comes too late. No such matter was complained of in the circuit court either in the motion for a new trial or otherwise, and therefore can not for the first time be raised here. In order to give this court a right to review rulings which are merely matters of exception, the

exceptions must not only be taken at the time, but they must again be brought forward in a motion for a new trial as grounds therefor, and be made matters of record by bill of exceptions. [Childs v. K. C., St. Joe & C. B. R. R. Co., 117 Mo. 414; Nichols v. Stevens, 123 Mo. 96.]

In this State the doctrine is well settled that a conveyance, though absolute in form, if intended at the time of its execution as a security for a debt, may be deemed by a court of equity, as a mortgage, and the grantor permitted to redeem.   Nor is it absolutely essential in all cases, in order to satisfy the requirements of the statute of frauds, that a written defeasance should have been entered into between the parties, for if there is a denial of the trust character of the conveyance by the grantee, as in this case, equity will treat such denial as a fraud on his part, and thus hold him as firmly to the verbal defeasance as though it had been a formal written one.

The effect to be given to conveyances of the character of the one in question has frequently been before this court. Wilson v. Drumrite, 21 Mo. 325, in many of its essential features, is similar to the present case.   There an accounting was ordered for the value of the land sold, and a reconveyance of the residue decreed.   "The only difficulty," said LEONARD, J., who wrote the opinion in that case, "is the ascertaining of the character of the transaction.   When it is once ascertained to be a mortgage, all the consequences of account, redemption, and the like, follow, notwithstanding any stipulation to the contrary."   In the more recent case of Bobb v. Wolff, 148 Mo. 335, it was said: "While the courts have applied many tests to disclose the true nature of the transaction, whether an absolute deed or a mortgage, the true test, and essential requisite has been, 'the continued existence of a debt' from the grantor to the grantee in the deed.   If there was no debt, the instrument can not be a mortgage, whatever else it may be, but if the

investigation develops an existing indebtedness by the grantor to the grantee, evidenced by bond or note, or like agreement not discharged by the conveyance, the courts have with great unanimity construed the deed to be only a mortgage." In Book v. Beasly, 138 Mo. 455, this language is used:. "So, also, if the conveyance is given in consideration of a previous debt due by the grantor to the grantee, and the debt still remains, so that the grantee may enforce it against the grantor, the conveyance will be held a mortgage." Many other cases to the same effect might be instanced, but as the above authorities are so particularly applicable to this case, they must control its determination. Tested by the principles and illustrations of those cases, the trial court was amply warranted in finding that the deed in question, though absolute in form, was simply intended at the time of its execution, as a security for a debt.

A careful reading of the evidence shows that this conveyance of plaintiff's homestead, originated in an effort on the part of plaintiff to raise the necessary funds with which to liquidate certain mortgage and other lien indebtedness then existing against it, together with an unsecured debt due defendant W. W. Jennings; that plaintiff also owed about one hundred and five dollars on account of the purchase price of the twenty-acre tract, and that in the aggregate, his indebtedness that defendant agreed to assume and pay off, amounted to $937.30, and that the land conveyed to defendant W. W. Jennings to secure him on account of said debts and assumptions was worth about $1,500. As above suggested, the holders of the original indebtedness were vigorously urging plaintiff for settlement at that time. Indeed, the forty-acre homestead tract had actually been advertised for sale under one of the prior mortgages against it, just a short time before the execution of the conveyance in question. After several ineffectual efforts to borrow the money elsewhere, plaintiff applied to defendant W.

W. Jennings, who it seems, with a view of getting his own debt secured, finally agreed to pay all the lien indebtedness against both of plaintiff's tracts of land, amounting, as before stated (including defendant's then debt), to the sum of $937.30.

It also appears, that in consummating this arrangement, plaintiff executed and delivered to W. W. Jennings his negotiable promissory note for the last-named sum, due in three years after the date thereof, and in order to secure the payment of said note, plaintiff made an absolute deed to the forty-acre tract, and assigned to Jennings his bond for a deed to the twenty-acre tract; that the conveyance at defendant's request was made absolute instead of a mortgage to avoid the expense of a foreclosure proceeding in the event plaintiff would be unable to comply with his part of the agreement; that plaintiff was to remain in possession of the premises until default in the payment of the note by him should be made, and that he did actually remain in possession of the property until ousted in November, 1896, under ejectment proceedings instituted by Joseph Eckley, who it seems, was an innocent purchaser of the forty-acre tract, having acquired same by successive conveyances from W. W. and S. J. Jennings; that at the same time and contemporaneous with the making of the deed by plaintiff, the defendant W. W. Jennings signed and acknowledged a quitclaim deed reconveying the forty-acre tract to plaintiff for the recited consideration of $937.31, which, together with the note, was inclosed in an envelope and on the back of the note was written the memorandum, above mentioned, signed by both plaintiff and W. W. Jennings, providing in substance that upon payment of the note and interest said quitclaim deed should be delivered to the plaintiff, but in the event default was made in the payment of the note or an installment of interest thereon as it became due, the said W. W. Jennings should have the right to cancel the debt and declare an abso-

lute forfeiture of the conveyance; that all the papers should be deposited and remain in the bank until plaintiff should redeem, or until he should fail to meet the interest or principal payment. The defendant W. W. Jennings paid off the original mortgage and other lien indebtedness against plaintiff's forty-acre tract, and part of the balance due on the purchase price of the twenty-acre tract according to his agreement with plaintiff, but failed to deposit or leave in the bank, the quitclaim deed and note with the memorandum on the back thereof. That in September, 1884, W. W. Jennings by warranty deed conveyed to his brother S. J. Jennings, the forty-acre tract in controversy and at the same time delivered to him the quitclaim deed and indorsed and turned over to him the notes of plaintiff. That afterwards, on the said — day of March, 1896, said S. J. Jennings sold and conveyed the forty-acre tract to Joseph Eckley, an innocent purchaser, who it seems knew nothing of the outstanding contract between the plaintiff and defendants.

In view of plaintiff's urgent needs to save his home from being sacrificed at a forced sale under the first deed of trust he had put upon it; the remarkable provision of the co-temporaneous contract entered into between plaintiff and W. W. Jennings at the time plaintiff made to Jennings the deed to the forty-acre tract; the great inadequacy of the price; the fact that plaintiff continued to pay interest on the note and was allowed to remain in possession of the land after the conveyance without paying rent, all tend to place the matter in the clearest possible light and support the contention of the plaintiff, that the original transaction between plaintiff and the defendant, W. W. Jennings, had its inception in an effort to secure a loan to pay certain indebtedness then pressing plaintiff, and that the conveyance in question was really intended as a mortgage, and not to operate as an absolute deed. It will

thus be seen without reviewing the evidence more in detail, that our view of the evidence accords with the finding of the circuit court.

But the defendant insists that in as much as plaintiff paid interest without objection on his note after it had been assigned to S. J. Jennings, he is estopped from now asserting his right under the redemption contract indorsed on the note. To this insistence of defendant, it will suffice to say, without further comment, that an estoppel *in pais* is an affirmative defense and must be specifically pleaded by the party seeking its protection. No such defense having been interposed in the court below, the defendant for that reason will be precluded from invoking it here. [Throckmorton v. Pence, 121 Mo. 50; Avery v. K. C. & S. Ry. Co., 113 Mo. 561.]

It is also insisted by defendant that the plaintiff had slept on his rights so long before bringing suit, as to induce defendant to believe that they were released from the contract, and for his laches in that regard equity should now refuse the relief asked. The record fails to show any unnecessary delay on the part of plaintiff in the matter of the institution of his suit against defendants. His note had not before that time matured; the interest on same was being received without objection as same fell due; he had remained in the undisturbed possession of the property (as he was to do under his contract with W. W. Jennings until he should default in his payments) up to October or November, 1896, when he was ousted by Eckley, an innocent purchaser of the land, and all along up to that time had been induced to believe that S. J. Jennings (after the land and note had been turned over to him) would carry out in good faith the contract as originally made with the defendant W. W. Jennings.

We are unable to discover wherein the cases cited by counsel for defendant, of which Schradski v. Albright, 93 Mo. 42,

Appeal from Pemiscot Circuit Court.—*Hon. Henry C. Riley,* Judge.

REVERSED AND REMANDED.

SHERWOOD, P. J.—The trial of defendant in this cause for murdering Milos Johnson, by shooting him with a pistol, resulted in a verdict of guilty of murder in the second degree, and affixing as punishment imprisonment in the penitentiary for the term of twenty-three years. There are no briefs or assignments of error filed by defendant, nor are briefs filed on part of the State, nor has the cause been argued, nor is the bill of exceptions indexed.

There was sufficient support in the evidence for the verdict. No instructions were asked by defendant, but he excepted to all given for the State, 13 in number. Number 12 of the series reads this way:

"The court further instructs the jury that if you believe from the evidence that the defendant, Theodore Patterson, sought or voluntarily entered into a difficulty with the deceased, Milos Johnson, which resulted in the shooting and killing the said Milos Johnson, you can not acquit the defendant on the ground of self-defense, unless you shall further find from the evidence that the defendant withdrew or attempted to withdraw from the difficulty before he fired the fatal shot."

This instruction is given in plain disregard of numerous decisions of this court. A man does not lose his right of self-defense by beginning the quarrel, unless he does so for the purpose of doing his adversary great bodily harm or else effecting his death. If he provoke the quarrel without such felonious intent, intending merely an ordinary battery, the final killing in self-defense would only be manslaughter in the fourth degree. In such cases the right of self-defense would

Vol 159 mo—36

Fisher & Co. Real Estate Co. v. Realty Co.

be of an imperfect nature, and not absolute in its character. But even if a man begin a quarrel with a felonious intent and with a lethal weapon, still, if he honestly withdraws from, and abandons, the fight, and his adversary still pursues him, the beginner of the fight, having reached what is known in legal contemplation as the "wall," may turn and attack his pursuer, and if, being closely pressed by him, he kills him to avoid his own destruction, the homicide is excusable by self-defense. [State v. Partlow, 90 Mo. 608, and cases cited; State v. Cable, 117 Mo. 380.]

And we have said in the more recent case of State v. Rapp, 142 Mo. 443, that "the voluntary entering into a difficulty" is not an ingredient in any homicial crime. And if the right of self-defense exists, its exercise is necessarily a voluntary and affirmative act. [Ib.]

For the error pointed out, the judgment will be reversed and the cause remanded. All concur.